In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-1143

SANDRA D. WILLIAMS,

*Plaintiff-Appellant*,

*v.*

OSI EDUCATIONAL
SERVICES, INCORPORATED,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06 C 285—**Patricia J. Gorence**, *Magistrate Judge.*

———————

ARGUED SEPTEMBER 11, 2007—DECIDED OCTOBER 10, 2007

———————

Before RIPPLE, MANION and WOOD, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Sandra Williams filed this action
in the district court on behalf of herself and a putative
class. She sought relief under the Fair Debt Collection
Practices Act ("FDCPA"), 15 U.S.C. § 1692k (2000).[1] The
district court granted the defendant, OSI Educational

---

[1] The district court had jurisdiction under 28 U.S.C. § 1331. The
parties consented to adjudication by a magistrate judge. *See*
28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b).

Services, Inc., ("OSI"), summary judgment. Ms. Williams then filed a timely appeal to this court.[2] For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A.

Ms. Williams is a consumer whose debt was incurred for personal, family or household purposes. *See* 15 U.S.C. § 1692a(5). OSI is a debt collection agency, as defined in 15 U.S.C. § 1692a(6); it was hired by Great Lakes Higher Education Guaranty Corp. ("Great Lakes") to collect its debts. OSI sent Ms. Williams a letter and a debt validation notice, dated March 28, 2005. The letter, which is set out as an appendix to this opinion, sought to collect a sum of $807.89 labeled as "Total Due," which was the outstanding balance owed to Great Lakes. The letter breaks down the amount owed as follows:

DATE:          03/28/05

PRINCIPAL:   $683.56

INTEREST:    $ 16.46

FEES:          $107.87

TOTAL DUE:  $807.89

The letter further states:

> The balance may not reflect the exact amount of interest which is accruing daily per your original agreement

---

[2]  Our jurisdiction is based on 28 U.S.C. § 1291.

with your creditor. Contact us to find out your exact payout balance.

R.17, Ex. A.

**B.**

The district court granted OSI's motion for summary judgment. It determined that the letter apprised Ms. Williams of the total amount due, including the amount of the principal, interest and fees due. The district court stated that, "[a]lthough the language in the letter does not exactly track the 'safe harbor' wording in *Miller* [*v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000)], the letter clearly advises that additional interest is accruing on a daily basis and that, therefore, additional interest may be added." R.28 at 6. Comparing this case to *Taylor v. Cavalry Investment, L.L.C.*, 365 F.3d 572 (7th Cir. 2004), the district court took the view that the letter complied with the statute because OSI's "letter states the amount of the debt clearly enough so that an unsophisticated recipient would not misunderstand it." R.28 at 6-7.

**II**

**DISCUSSION**

Ms. Williams submits that there is an issue of material fact as to whether OSI's letter clearly states the amount of the debt, as required by the FDCPA. In examining that contention, we begin with the wording of the statute. The FDCPA requires that debt collectors state "the amount of the debt" that they are seeking to collect from the consumer. 15 U.S.C. § 1692g(a)(1). The debt collector's letter must state the amount of the debt "clearly enough that the

recipient is likely to understand it." *Chuway v. Nat'l Action Fin. Servs. Inc.*, 362 F.3d 944, 948 (7th Cir. 2004); *see also Taylor*, 365 F.3d at 574. To ensure that this statutory command is implemented properly, we must evaluate the letter to determine whether it causes any "confusion" or "misunderstand[ing]" as to the amount due. *Taylor*, 365 F.3d at 575-76. Our test is an objective one. *See Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005). In making this determination, we evaluate the letter from the perspective of an "unsophisticated consumer or debtor." *Id*. The unsophisticated consumer is "uninformed, naive, [and] trusting," but possesses "rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences." *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000); *see also Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003). Notably, we have rejected explicitly the notion that we should employ the *least* sophisticated debtor standard, the "very last rung on the sophistication ladder." *Pettit*, 211 F.3d at 1060 (internal quotation marks omitted); *see also Gammon v. GC Servs., Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). In short, we must determine whether the letter "[c]ould well confuse a substantial number of recipients." *Taylor*, 365 F.3d at 575.

In undertaking our review, we must keep in mind the procedural framework in which the case comes to us. The general principles that guide our review of a case coming to us on summary judgment are well-established. We review de novo a district court's decision on a motion for summary judgment and construe all facts in favor of the non-moving party, here Ms. Williams. *See Durkin*, 406 F.3d at 414. "[S]ummary judgment is appropriate if, on the

record as a whole, a rational trier of fact could not find for the non-moving party." *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) (internal quotation marks and citation omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In an FDCPA case, "a mere claim of confusion is not enough" to prevail on summary judgment. Rather, the "plaintiff must show that the challenged language of the letters unacceptably increases the level of confusion." *Durkin*, 406 F.3d at 415 (internal quotation marks omitted). Our past cases indicate that summary judgment may be avoided by showing that the letter, on its face, will "confuse a substantial number of recipients." *Taylor*, 365 F.3d at 575. We also have said that, absent a showing that the face of the letter will precipitate such a level of confusion, the "plaintiff must come forward with evidence beyond the letter and beyond [her] own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial." *Durkin*, 406 F.3d at 415 (noting that evidence may consist of "carefully designed and conducted consumer survey[s]" or expert witnesses); *Pettit*, 211 F.3d at 1061-62; *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 502, 504 (7th Cir. 1999); *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060-61 (7th Cir. 1999).

Ms. Williams chooses to base her case on the first of these options. She focuses on the following language from OSI's letter:

> The balance may not reflect the exact amount of interest which is accruing daily per your original agreement with your creditor. Contact us to find out your exact payout balance.

R.17, Ex. A. In her view, there are three reasons why OSI's letter would confuse a substantial number of recipients. We shall examine each.

First, Ms. Williams argues that the language in OSI's letter is more confusing than that in *Chuway*, which we held could "confuse a substantial number of recipients." *Chuway*, 362 F.3d at 948. In that case, the letter stated the "balance" and also contained the following language: "Please remit the balance listed above in the return envelope provided. To obtain your most current balance information, please call [phone number]." *Id.* at 947. We held that the letter violated the FDCPA. There, the confusion arose because the letter did not state why the "current balance" would be different than the stated "balance." The plaintiff could have thought that "the reference to the 'current balance' meant that the defendant was trying to collect an additional debt [without] telling her how large an additional debt and thus violating the statute." *Id.* at 947-48. In contrast, the language in OSI's letter links the difference between the "total due" and the "exact payout balance" to the "interest which is accruing daily per your original agreement with your creditor." R.17, Ex. A. OSI's letter thus provides the information that created the confusion in the *Chuway* letter.

Ms. Williams' second and third arguments are best treated together. She submits that the letter's language leaves open the possibility that the actual amount due is less than the amount stated on the letter. She further suggests that the sentence's use of the present tense makes it possible to conclude that the stated amount due was not accurate on the date that the letter was written. In our view, both these contentions are based on a strained reading of the sentence. It would be "unrealistic, peculiar, [and] bizarre" to read OSI's letter in this way. *Durkin*, 406 F.3d at 414; *see also Pettit*, 211 F.3d at 1060 (rejecting "bizarre" or "idiosyncratic" interpretations). The common sense reading of the letter is that the balance is accurate

as of the date the letter is written, but that the amount due will increase because of interest that is accruing daily. This construction is supported by the letter's itemization of "PRINCIPAL," "INTEREST," "FEES" and "TOTAL DUE" in a box with, and immediately below, the "DATE." Under a natural reading, the language conveys, even to an unsophisticated consumer, that interest will accrue after the letter is sent and therefore that the consumer should call to find out the "*exact* payout balance." R.17, Ex. A (emphasis added). As we said in *Chuway*, "It is impossible to draft a letter that is certain to be understood by every person who receives it; only if it would confuse a significant fraction of the persons to whom it is directed will the defendant be liable." 362 F.3d at 948.

We believe that the language in this letter is closer to the language in *Taylor* than to the language in *Chuway*. In *Taylor*, the letter similarly set forth the total due and broke down that total into principal and interest. It further stated: "[I]f applicable, your account may have or will accrue interest at a rate specified in your contractual agreement with the original creditor." *Taylor*, 365 F.3d at 574. Three plaintiffs in *Taylor* had submitted affidavits stating that this sentence confused them about the amount of debt that the debt collector was trying to collect. *Id.* We held that the language was "entirely clear on its face" and thus, without further evidence of confusion, the plaintiffs' affidavits were insufficient to create a genuine issue of material fact for trial.[3] *Id.* at 575.

---

[3] Also at issue in *Taylor*, a consolidated appeal, was a letter that used the following language: "[Y]our account balance may be periodically increased due to the addition of accrued interest or other charges as provided in your agreement with your

(continued...)

As we noted earlier, in opposing summary judgment, Ms. Williams relied solely on OSI's letter. She submitted no other evidence to support her view that OSI's letter is confusing. Without more, Ms. Williams' unsupported assertion that OSI's letter is confusing is insufficient to create a genuine issue of fact as to confusion.

Finally, from what we have said up to this point, it should be evident that our decision in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000), provides no support for Ms. Williams. In *Miller*, we dealt with a letter that stated the "unpaid principal balance" of the loan but added that

> this amount does not include accrued but unpaid interest, unpaid late charges, escrow advances or other charges for preservation and protection of the lender's interest in the property, as authorized by your loan agreement. The amount to reinstate or pay off your loan changes daily. You may call our office for complete reinstatement and payoff figures.

*Id.* at 875. We determined that the letter violated the statute because it did not state the "amount of the debt," as the FDCPA requires. *Id.* "[I]n an effort to minimize litigation under the debt collection statute," we also

---

[3] (...continued)
creditor." *Id.* at 575. That letter similarly set forth the total due and broke down that total into principal and interest. We held that this language—"the clear statement of a truism"—complied with the statute. *Id.*

established a "safe harbor"[4] for complying with this requirement. *Id.* at 876. The fact that the letter in this case does not adopt the language of the safe harbor is of no consequence. We made clear in *Miller* that "we do not hold that a debt collector *must* use this form of words to avoid violating the statute." *Id.* Although the safe harbor was offered in an attempt both to bring predictability to this area and to conserve judicial resources, it is compliance with the statute, not our suggested language, that counts.

## Conclusion

The letter set forth the amount of the debt with sufficient clarity and accuracy to comply with the requirements of the statute. Accordingly, we affirm the judgment of the district court.

AFFIRMED

---

[4] The safe harbor provides:

> As of the date of this letter, you owe $____ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800 [phone number].

*Id.* at 876.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*