In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-1089

JOSEPH DEGROOT, *individually on behalf of all others similarly situated,*

*Plaintiff-Appellant,*

*v.*

CLIENT SERVICES, INCORPORATED,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:19-cv-00951 — **William C. Griesbach**, *Judge.*

ARGUED SEPTEMBER 15, 2020 — DECIDED OCTOBER 8, 2020

Before FLAUM, ROVNER, and WOOD, *Circuit Judges.*

FLAUM, *Circuit Judge.* Plaintiff-appellant Joseph Degroot brought this putative class action suit in the Eastern District of Wisconsin against defendant-appellee Client Services, Inc. ("CSI"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. The district court granted

the collection agency's motion to dismiss, holding that CSI's communications were not false, misleading, or deceptive to the unsophisticated consumer. We agree and affirm.

## I. Background

Degroot, a Wisconsin resident, defaulted on a debt owed to Capital One Bank (USA), N.A. Subsequently, Capital One placed that debt for collections with AllianceOne Receivables Management, Inc. As part of its collection efforts, AllianceOne sent Degroot a letter on August 6, 2018, stating:

> The amount of your debt is $425.86. Please keep in mind, interest and fees are no longer being added to your account. This means every dollar you pay goes towards paying off your balance.

Based on AllianceOne's representations in the letter, Degroot understood that Capital One had "charged-off" his account, meaning that his debt would no longer accrue interest, late charges, or other fees for any reason.

Capital One subsequently reassigned, placed, or transferred the account to CSI for collections. CSI then mailed Degroot a letter dated March 11, 2019. The top left-hand corner of the letter contained CSI's logo and address, and a summary of information that read:

> CURRENT CREDITOR: CAPITAL ONE BANK (USA), N.A.
> ACCOUNT NUMBER: XXXXXXXXXXXX9018
> BALANCE DUE: $425.86

Below this summary was a heading in bold, capital letters: "NEW INFORMATION ON YOUR ACCOUNT." The letter

went on to note that Capital One had "placed the above account with our organization for collections" and gave an itemized summary of Degroot's current balance:

| | |
|---|---|
| Balance Due At Charge-Off: | $425.86 |
| Interest: | $0.00 |
| Other Charges: | $0.00 |
| Payments Made: | $0.00 |
| Current Balance: | $425.86 |

After providing an offer to resolve the debt and various disclosures required by certain states, the letter concluded on a third page with an "ACCOUNT RESOLUTION OFFER." The terms of the offer included a notice that "no interest will be added to your account balance through the course of Client Services, Inc. collection efforts concerning your account."

Following his receipt of this letter, Degroot filed suit, seeking to represent himself and all other persons to whom CSI mailed a similar letter in Wisconsin. He alleged that CSI's letter misleadingly implied that Capital One would begin to add interest and possibly fees to previously charged-off debts if consumers failed to resolve their debts with CSI. Specifically, he alleged that he was "confused by the discrepancy between the AllianceOne letter's statement that 'interest and fees are no longer being added to your account' and the 3/11/19 Letter's implication that Capital One would begin to add interest and possibly fees to the Debt once [CSI] stopped its collection efforts on an unspecified date." In light of these allegedly false or misleading statements, Degroot asserted that CSI violated 15 U.S.C. § 1692e by using false, deceptive, and misleading representations or means to collect a debt and 15 U.S.C. § 1692g by failing to disclose the amount of the debt in a clear and unambiguous fashion.

After its initial motion to dismiss was mooted by Degroot's filing of an amended complaint, CSI filed a new motion to dismiss the amended complaint. The district court granted that motion, concluding that CSI's letter was not false, misleading, or deceptive. Specifically, the court found that the March 11, 2019 letter had accurately and correctly disclosed the amount of the debt, and that CSI's letter did not imply fees or interest would be added to the debt in the future. Furthermore, the court noted that even if CSI's letter did imply that fees and interest would begin to accrue at a later date if the debt remained outstanding, the statement was not false or misleading given that Wisconsin law provided for the assessment of fees and interest on "static" debts in certain circumstances.

Noting differing approaches to this issue at the district level, the court invited "clarification in this important area of law." This appeal followed.

## II. Discussion

Because the district court dismissed Degroot's suit under Rule 12(b)(6), we review the allegations in Degroot's complaint de novo to determine whether he has stated a claim upon which relief can be granted. *Perry v. Coles County*, 906 F.3d 583, 586 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 1225 (2019). "[W]e accept as true all factual allegations in the complaint and draw all permissible inferences in plaintiff['s] favor." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Notwithstanding that deference, "[t]o survive a motion to dismiss, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 365–66 (citation omitted). With that standard in mind, we turn to the specific allegations in this case.

### A. Itemized Breakdown and Zero Balances

Among other things, the FDCPA requires debt collectors to send consumers a written notice disclosing "the amount of … debt" they owe. 15 U.S.C. § 1692g(a)(1). This disclosure must be clear. *See Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016) ("If a letter fails to disclose the required information clearly, it violates the Act, without further proof of confusion."). Here, there is no dispute that the letter disclosed the amount that Degroot owed as of March 11, 2019, the date of CSI's letter. That said, "a collection letter can be 'literally true' and still be misleading … if it 'leav[es] the door open' for a 'false impression.'" *Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 765 (7th Cir. 2018) (alteration in original) (citations omitted). The pertinent question in this case is thus whether CSI, by providing a breakdown of Degroot's debt that showed a zero balance for "interest" and "other charges," violated 15 U.S.C. §§ 1692e and 1692g(a)(1) by implying that interest and other charges would accrue if the debt remained unpaid. *See, e.g.*, *Boucher*, 880 F.3d at 371 (explaining that where a plaintiff claims that a false or misleading statement goes to the amount of debt, a determination of whether there has been a violation of § 1692e "'goes hand-in-hand with whether the amount of the debt has been accurately disclosed' under § 1692g(a)(1)").

A debt collector violates § 1692e by making statements or representations that "would materially mislead or confuse an unsophisticated consumer." *Koehn v. Delta Outsource Grp., Inc.*, 939 F.3d 863, 864 (7th Cir. 2019) (quoting *Boucher*, 880 F.3d at 366). While the paradigmatic example of such prohibited behavior is the inclusion of patently false information, we have also held that "a dunning letter is false and misleading

if it 'impl[ies] that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass.'" *Boucher*, 880 F.3d at 367 (alteration in original) (quoting *Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012)).

With that background, we turn to the itemized breakdown of debt at issue in this case. To determine whether CSI's letter was false or misleading, we must answer two questions. The first is whether an unsophisticated consumer would even infer from the letter that interest and other charges would accrue on his outstanding balance if he did not settle the debt. If, and only if, we conclude that an unsophisticated consumer would make such an inference, then we move to analyze whether the inference is false or misleading.

To answer the question of whether a statement can be interpreted as Degroot claims, we ask whether an unsophisticated consumer could reach that interpretation. *See Steffek v. Client Servs., Inc.*, 948 F.3d 761, 765 (7th Cir. 2020). As we have stated time and again, while the unsophisticated consumer is "uninformed, naïve, or trusting," we assume the consumer "nonetheless possesses reasonable intelligence, basic knowledge about the financial world, and is wise enough to read collection notices with added care." *Koehn*, 939 F.3d at 864 (internal quotation marks and citations omitted). For that reason, our unsophisticated consumer test is objective and "disregards 'bizarre' or 'idiosyncratic' interpretations of collection letters." *Dunbar*, 896 F.3d at 764–65 (citations omitted).

CSI, joined by the Consumer Financial Protection Bureau ("CFPB" or "the Bureau") and ACA International, the Association of Credit and Collection Professionals ("ACA"), as amici curiae, urge us to conclude that Degroot's alleged under-

standing of its dunning letter is just such a "bizarre" or "idiosyncratic" interpretation. As the CFPB points out, the itemization of a debt is a record of what has already happened. It "discloses the interest or other charges that have been assessed between a date in the past (in this case, the date that the debt was charged-off) and the date of the notice." For that reason, the Bureau argues, such a breakdown cannot be construed as forward looking and therefore misleading. We agree.

The facts in this case bear a striking resemblance to those in *Koehn*, in which we concluded a similar claim could not proceed. *See* 939 F.3d at 865. The plaintiff in *Koehn* alleged that the dunning letter in question was misleading because it used the phrase "current balance" to describe her balance. *Id.* at 864. She argued "current balance" implied that her balance could grow even though "her account was actually 'static,' meaning that additional interest and fees could no longer be added to the balance." *Id.* "By falsely implying that the 'current balance' might increase, she contend[ed], the debt collector's choice of wording [would] mislead debtors to give such static debts greater priority than they otherwise would." *Id.* Rejecting that argument we explained:

> Dunning letters can comply with the Fair Debt Collection Practices Act without answering all possible questions about the future. A lawyer's ability to identify a question that a dunning letter does not expressly answer ("Is it possible the balance might increase?") does not show the letter is misleading, even if a speculative guess to answer the question might be wrong.

*Id.* at 865.

The logic of *Koehn* applies with equal force here. CSI's letter merely detailed, correctly, that no interest or other charges had accrued from the date Capital One charged off the debt to March 11, 2019. Indeed, except for the statement regarding the accrual of interest during CSI's pursuit of the loan, which we address below, CSI's letter was totally silent as to the future. Thus, any inference Degroot made about the debt accruing interest or other charges in the future was entirely speculative. Degroot's insistence—apparently accepted by several district courts, *see, e.g.*, *Duarte v. Client Servs., Inc.*, No. 18 C 01227, 2019 WL 1425734 (N.D. Ill. Mar. 29, 2019)—that the inclusion of a zero balance for interest and fees naturally implies he could incur future interest or other charges if he did not settle the debt is unpersuasive. In line with *Koehn*, Degroot's mere raising of an open question about future assessment of other charges with a speculative answer does not make the breakdown misleading.

Indeed, our own caselaw appears to compel the inclusion of an itemized breakdown. In *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004), we held that a debt collector violated § 1692e by failing to include an itemized breakdown showing how the debt in question had doubled in size due to fees and other charges. *See id.* at 566 (explaining that when presented with a non-itemized bill, an unsophisticated consumer may incorrectly assume that she has in fact incurred the entire amount of debt in charges). As we explained, the letter "was misleading because it gave a false impression of the character of the debt … thereby impairing [consumers'] ability to knowledgeably assess the validity of the debt." *Id.* We then explained that a simple way to avoid such a problem was to "itemize the various charges that comprise the total

amount of debt." *Id*. The logic of *Fields* suggests that a collector will not violate the FDCPA if it accurately reports that the amount of additional other charges or interest is zero, even if it is also permissible—maybe even preferable—for the creditor to fill in those fields with a "not applicable" notation when it is handling a "static" debt.

Furthermore, while Degroot's complaint relies heavily on AllianceOne's statement that "interest and fees are no longer being added" to support his allegation that he found CSI's letter confusing and misleading, even that statement did not say that interest and fees could never be added to his account. That interest and fees are no longer being added to one's account does not guarantee that they never will be, because there is no way—unless the addition is a legal or factual impossibility—to know what may happen in the future. That is why a statement in a dunning letter that relates only to the present reality and is completely silent as to the future generally does not run afoul of the FDCPA. While dunning letters certainly cannot explicitly suggest that certain outcomes may occur when they are impossible, *see, e.g.*, *Boucher*, 880 F.3d at 367; *Lox*, 689 F.3d at 825, they need not guarantee the future, *see Koehn*, 939 F.3d at 865. For that reason, the itemized breakdown here, which makes no comment whatsoever about the future and does not make an explicit suggestion about future outcomes, does not violate the FDCPA.

### B.  No Interest Statement

The above analysis applies with equal force to Degroot's argument that CSI's letter attempted to mislead him when it stated, "Please note that no interest will be added to your ac-

count balance through the course of Client Services, Inc. col-
lection efforts concerning your account." We likewise con-
clude that this statement does not run afoul of § 1692e.

The principle epitomized by *Koehn* is that where a dun-
ning letter only makes explicit representations about the pre-
sent that are true, a plaintiff may not establish liability on the
basis that it leaves ambiguity about the future. *See* 939 F.3d at
865. Where a dunning letter goes beyond describing the cur-
rent reality, however, and even implicitly suggests the possi-
bility or likelihood of an outcome in the future, the letter must
take great care to ensure that the outcome in question is in fact
possible or otherwise risk violating § 1692e. *See, e.g.*, *Boucher*,
880 F.3d at 367; *Lox*, 689 F.3d at 825.

Here, CSI's letter simply informed Degroot that no interest
would accrue while CSI pursued its debt collection efforts. It
did not address in any way whether interest would accrue in
the future after CSI no longer controlled the debt. Degroot
jumps on this ambiguity as evidence that CSI was trying to
mislead him into thinking that he had to settle with CSI, lest
he later be assessed interest on the debt. Even taking
Degroot's position to its logical conclusion, however, Allian-
ceOne's statement that "interest and fees are no longer being
added" would not violate § 1692e. It refers only to present
conditions and does not speculate one way or the other as to
whether interest and fees could ever be added to his account
in the future.

As *Koehn* suggests, the presence of ambiguity does not au-
tomatically point to an FDCPA violation. The fact that a
debtor may incorrectly speculate as to a possible outcome
does not render a dunning letter misleading. *See* 939 F.3d at
865. It is only when a dunning letter at least implicitly points

to a possible outcome that it can become misleading. Here, the statement "no interest will be added to your account balance through the course of Client Services, Inc. collection efforts" makes no suggestion regarding the possibility that interest will or will not be assessed in the future if CSI ends its collection efforts. For that reason, the letter complies with both §§ 1692e and 1692g.

### III. Conclusion

In this case, we agree with the district court's logic: Congress did not intend the FDCPA to require debt collectors to cast about for a disclosure formulation that strikes a precise balance between providing too little information and too much. The use of an itemized breakdown accompanied by zero balances would not confuse or mislead the reasonable unsophisticated consumer.

For the reasons stated above, we AFFIRM the judgment of the district court.